UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

| In re:                        |                         |
|-------------------------------|-------------------------|
| JOHN CLARK DONATELLI, JR.,    | Chapter 7               |
|                               | Case No. 14-12739-DF    |
| Debtor.                       |                         |

**MOTION OF BAYVIEW LOAN SERVICING, LLC**
**FOR RELIEF FROM THE AUTOMATIC STAY**

NOW COMES Bayview Loan Servicing, LLC ("**Bayview**") and respectfully requests pursuant to Section 362(d) of the U.S. Bankruptcy Code, Fed. R. Bankr. P. 4001 and 9014 as well as R.I. LBR 4001-1 that this Court enter an Order granting Bayview (or its successor in interest, if any) relief from the automatic stay in this case for the purpose of enforcing its rights under a certain Note and Mortgage encumbering real estate in which the above-referenced debtor asserts an interest. In support of its motion, Bayview states as follows.

STATEMENT OF MATERIAL FACTS

1.  John Clark Donatelli (the "**Debtor**") is an individual who currently has an ownership interest in the property known and numbered as 1101 Curtis Corner Road, South Kingstown, Rhode Island (the "**Property**"). Upon information and belief, the Property does serve as the principal residence of the Debtor as contemplated by 11 U.S.C. §522(d).

2.  The movant, Bayview, has a principal place of business at 4425 Ponce de Leon Boulevard, Coral Gables, Florida.

{00353318.DOC}

3.  On or about September 9, 2004, the Debtor executed and delivered to Dream House Mortgage Corporation (the "**Lender**") a promissory note in the original amount of $649,000.00 (the "**Note**"). Simultaneously therewith, as security for the obligations under the Note, the Debtor executed and delivered to Mortgage Electronic Registration Systems, Inc. as nominee for the Lender a mortgage (the "**Mortgage**") on the Property. True copies of said Note and Mortgage are attached as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively.

4.  Bayview is the assignee of the Mortgage. A true copy of the assignment of Mortgage is attached as <u>Exhibit C</u>.

### GROUNDS FOR RELIEF FROM THE AUTOMATIC STAY

### RILBR 4001-1 Requirements

6.  Bayview seeks relief for cause pursuant to 11 U.S.C. §362(d)(1) – specifically, the Debtor's failure to make pre-petition and post-petition payments due under the Note and Mortgage. In the alternative, Bayview seeks relief pursuant to 11 U.S.C. §362(d)(2) on the grounds that there is no equity in the Property and the Property is not necessary for an effective reorganization.

7.  Bayview is currently owed approximately $819,331.61 plus $826.00 for costs and fees associated with this motion. The debt is secured by Bayview's first mortgage on the Property.

8.  The following is a summary of the identity and estimation of the amounts due all lienholders regarding the Property, in order of the lienholders' respective priorities:

| Bayview | First Mortgage | $820,157.61 |
|---|---|---|
| Specialized Loan Servicing | Second Mortgage | $266,838.00 |
| | TOTAL | $1,086,995.60 |

9. Therefore, the estimated total secured debt charged against the Property is at least $1,086,995.60.

10. Pursuant to the Debtor's Schedule A, which Bayview accepts only for the purpose of this motion, the value of the property is approximately $528,700.00. Upon information and belief, given the fact that the encumbrance on the Property exceeds its market value, there is no equity in the Property.

11. No other collateral secures the Debtor's obligations under the Note.

### Bankruptcy Filing

12. On or about December 16, 2014, the Debtor filed a Chapter 7 petition (the "**Petition Date**"), commencing the present case.

13. Pursuant to the Debtor's Statement of Intention, the Debtor intends to retain the Property.

14. The current monthly post-petition payment under the Note and Mortgage is $4,285.22 including principal, interest and escrow. Further, as of the date of this motion for relief, Bayview has incurred approximately $826.00 in legal fees and costs seeking relief from the automatic stay for the purpose of enforcing its rights under the Note and Mortgage.

15. As of the date of filing of this motion, Bayview was owed approximately $10,025.28 in total post-petition arrears, compromised of the following:

{00353318.DOC}  3

    a. $4,914.06 for the monthly post-petition mortgage payment for January 2015; and

    b. $4,285.22 for the monthly post-petition mortgage payment for February 2015; and

    c. $826.00 that Bayview has incurred in legal fees in filing and prosecuting this motion.

16. As of the expected hearing date for this motion, Bayview will be owed approximately $14,310.50 in total post-petition arrears, compromised of the following:

    a. $4,914.06 for the monthly post-petition mortgage payment for January 2015; and

    b. $8,570.44 for the monthly post-petition mortgage payment for February 2015 and March 2015 (2 x $4,285.22); and

    c. $826.00 that Bayview has incurred in legal fees in filing and prosecuting this motion.

17. As of the Petition Date, the Debtor owed Bayview at least $105,072.20 in pre-petition arrears, comprised of the following:

    a. $13,739.12 for monthly mortgage payments for December 2011 through March 2013) (4 x $3,434.78);

    b. $38,143.20 for monthly mortgage payments for April 2013 through January 2014 (10 x $3,814.32);

    c. $9,028.56 for monthly mortgage payments for February 2014 through March 2014 (2 x $4,514.28);

{00353318.DOC}    4

    d. $44,226.54 for monthly mortgage payments for April 2014 through December 2014 (9 x $4,914.06); less

    e. $65.22 that Bayview is holding as a pre-petition credit.

18. As of the Petition Date, the automatic stay provisions of 11 U.S.C. §362 became effective, thereby preventing Bayview from exercising its rights as a mortgagee of the Debtor's Property as is set forth under certain applicable state and federal laws including, without limitation, its right to commence foreclosure proceedings. By the motion brought herein, Bayview seeks relief from the automatic stay pursuant to 11 U.S.C. §362.

### Good Cause Exists to Grant Bayview Relief

19. Pursuant to the terms of the Mortgage securing the indebtedness to Bayview, the Debtor must make timely mortgage payments to Bayview or its agent. The Debtor owes a total accelerated amount pursuant to the Note and Mortgage of approximately $819,331.61 plus $826.00 for fees and costs associated with this motion. The Debtor's failure to make pre-petition and post-petition payments to Bayview constitutes a material default under the terms of the Note and Mortgage.

### Property Is Not Necessary to an Effective Reorganization and the Debtor Does Not Have Equity in the Property

20. Because this is a liquidation case pursuant to Chapter 7 of the U.S. Bankruptcy Code, the Property is not necessary to an effective reorganization as contemplated by 11 U.S.C. §362(d)(2)(B).

21. The Debtor has no equity in the Property.

22.    In light of the foregoing, there exists sufficient cause to grant Bayview (or its successors in interest) relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) –(2) with respect to the Property.

WHEREFORE, Bayview respectfully requests that the Court enter an Order:

A.   Granting Bayview (or its successors in interest) relief from the automatic stay so that Bayview may enforce its right under the Note, Mortgage and applicable law including, but not limited to, foreclosure of Bayview's Mortgage on the Property and summary process proceedings;

B.   Declaring that Fed. R. Bankr. P. 4001(a)(3) does not apply in this case so that Bayview may immediately enforce the requested order granting relief from the automatic stay;

C.   Allowing Bayview to assess the Note and Mortgage with reasonable attorney's fees and costs in connection with the preparation, filing and prosecution of this Motion, as allowed under the terms of the Note and Mortgage, such fees and costs being non-recourse against the Debtor in the event the Debtor receives a discharge unless the fees and costs are included in a reaffirmation agreement; and

D.   Granting Bayview other relief as this Court deems just under the circumstances.

{00353318.DOC}    6

        Respectfully submitted,

        BAYVIEW LOAN SERVICING, LLC,

        By its attorneys,

        JEANNE M. SCOTT LAW OFFICES,

        */s/ Jeanne Scott*
        Jeanne M. Scott, Esq. – RI Bar No. 6178
        2 Broadway
        Newport, RI 02840
        (401) 374-3141
        JMS@JeanneScottLaw.com

DATE: February 13, 2015

{00353318.DOC}        7

CASE NAME: John Clark Donatelli, Jr.
CASE NUMBER: 14-12739
CASE CHAPTER: 7

## REQUIRED RESPONSE TIME
## RHODE ISLAND BANKRUPTCY RULE 1005-1(d)

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if served by mail, any party against whom such paper has been served, or any other party who objects to the relief sought, shall serve and file an objection or other appropriate response to said paper with the Bankruptcy Court Clerk's Office, 380 Westminster Street, 6th Floor, Providence, RI 02903, (401) 626-3100. If no objection or other response is timely filed, the paper will be deemed unopposed and will be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice requires otherwise.

# EXHIBIT A

Promissory Note

{00353318.DOC}

## InterestFirst<sup>SM</sup> NOTE

__SEPTEMBER    09__ , __2004__    __PROVIDENCE__                , __RHODE ISLAND__
[Date]                    [City]                    [State]
__1101 CURTIS CORNER ROAD__
__SOUTH KINGSTOWN, RHODE ISLAND 02879__
[Property Address]

1. **BORROWER'S PROMISE TO PAY**

   In return for a loan that I have received, I promise to pay U.S. $ __649,000.00__ (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is __DREAM HOUSE MORTGAGE CORPORATION, A RHODE ISLAND CORPORATION__.

   I will make all payments under this Note in the form of cash, check or money order.
   I understand that Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of __6.500__ %.
   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**

   (A) **Time and Place of Payments**

   I will make a payment every month. This payment will be for interest only for the first __120__ months, and then will consist of principal and interest.
   I will make my monthly payment on the __1ST__ day of each month beginning on __NOVEMBER    01__, __2004__. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on __OCTOBER    01__, __2034__ I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at __385 SOUTH MAIN STREET__
   __PROVIDENCE, RHODE ISLAND 02903__
   or at a different place if required by the Note Holder.

   (B) **Amount of Monthly Payments**

   My monthly payment will be in the amount of U.S. $ __3,515.42__ for the first __120__ months of this Note, and thereafter will be in the amount of U.S. $ __4,838.77__. The Note Holder will notify me prior to the date of change in monthly payment.

4. **BORROWER'S RIGHT TO PREPAY**

   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before

MIN NO.: ██████████7101-1                Initials __J__ __C__ __D__ __    __ __    __
MULTISTATE InterestFirst FIXED RATE NOTE-Single Family-Fannie Mae UNIFORM INSTRUMENT
*DocPrep Services, Inc.* FORM - MS3271N-4252        Page 1 of 3            Form 3271 1/01
                        ORIGINAL

applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

5. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A) **Late Charge for Overdue Payments**

   If the Note Holder has not received the full amount of any monthly payment by the end of __15__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ____5.000____ % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

   (B) **Default**

   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C) **Notice of Default**

   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   (D) **No Waiver By Note Holder**

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E) **Payment of Note Holder's Costs and Expenses**

   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES**

   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

Initials  J  L  D

MIN NO.: ▇▇▇▇▇▇▇▇7101-1
MULTISTATE InterestFirst FIXED RATE NOTE-Single Family-Fannie Mae UNIFORM INSTRUMENT
*DocPrep Services, Inc.* FORM - MS3271N-4252    Page 2 of 3    Form 3271 1/01
ORIGINAL

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)          _____(Seal)
              -Borrower                                         -Borrower
JOHN CLARK DONATELLI

_____(Seal)          _____(Seal)
              -Borrower                                         -Borrower

                                                         (Sign Original Only)

Pay to the order of,
Without Recourse,
BY:_____
John C. Ponte, President
Dream House Mortgage Corporation          MIN NO.: ████████████7101-1

MULTISTATE InterestFirst FIXED RATE NOTE-Single Family-Fannie Mae UNIFORM INSTRUMENT
*DOCPREP SERVICES, INC.* FORM - MS3271N-4252          Page 3 of 3          Form 3271 1/01
                                        ORIGINAL

# EXHIBIT B

Mortgage

{00353318.DOC}

Received: 09/16/2004 09:13:43 1154 016

After Recording Return To:

DREAM HOUSE MORTGAGE
CORPORATION
385 SOUTH MAIN STREET
PROVIDENCE, RHODE ISLAND 02903

RECEIVED FOR RECORD
WITNESS SOUTH KINGSTOWN TOWN CLERK

[signature]

ESCROW NO.:
TITLE NO.:
PARCEL NO.: _____ [SPACE ABOVE THIS LINE FOR RECORDING DATA] ——

MIN NO.: ~~XXXXXXXXXXXXXXX~~ 7101-1    **MORTGAGE**

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated SEPTEMBER 9, 2004, together with all Riders to this document.

(B) "Borrower" is
JOHN CLARK DONATELLI
_____
_____
_____

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is
DREAM HOUSE MORTGAGE CORPORATION, A RHODE ISLAND CORPORATION
Lender is a A RHODE ISLAND CORPORATION organized and existing under the laws
of RHODE ISLAND. Lender's address is
385 SOUTH MAIN STREET, PROVIDENCE, RHODE ISLAND 02903
_____

Initials J C D ___ ___ ___

RHODE ISLAND-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    Form 3040 1/01
DOCPREPSERVICES, INC. FORM - MHTGRI1310    Page 1 of 15
ORIGINAL

Received: 09/16/2004 09:13:47 1154 017

(E) "Note" means the promissory note signed by Borrower and dated SEPTEMBER 9, 2004. The Note states that Borrower owes Lender
SIX HUNDRED FORTY NINE THOUSAND AND 00/100 _____ Dollars
(U.S. $ 649,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than OCTOBER 01, 2034.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
- [ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] Assumption Rider
- [ ] 1-4 Family Rider    [ ] Biweekly Payment Rider    [ ] Inter Vivos Trust Rider
- [ ] Other(s) [specify]:

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Initials J C D ___ ___ ___

RHODE ISLAND-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    Form 3040 1/01
DOCUPREPSERVICES, INC. FORM - MIRTGRI1301I    Page 2 of 15
ORIGINAL

Received: 09/16/2004 09:13:51 1154 018

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the ___COUNTY___ of ___WASHINGTON___:
[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

PARCEL NO.: _____

which currently has the address of ___1101 CURTIS CORNER ROAD___
[Street]
___SOUTH KINGSTOWN___, Rhode Island ___02879___ ("Property Address"):
[City/Area]    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with the law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: J C D

RHODE ISLAND-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    Form 3040 1/01
DocPrepServices, Inc. FORM - HMTGRI131(0)    Page 3 of 15
    ORIGINAL

Received: 09/16/2004 09:14:37 1154 030

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____  _____/s/ John Clark Donatelli_____ (Seal)
                                  JOHN CLARK DONATELLI           -Borrower

_____  _____ (Seal)
                                                                 -Borrower

_____  _____ (Seal)
                                                                 -Borrower

_____  _____ (Seal)
                                                                 -Borrower

_____  _____ (Seal)
                                                                 -Borrower

_____  _____ (Seal)
                                                                 -Borrower

———————————— [Space Below This Line For Acknowledgment] ————————————

STATE OF RHODE ISLAND,                          COUNTY SS: Providence

On this _9th_ day of _September_, _2004_, in _Providence_,
in said County, before me personally appeared
JOHN CLARK DONATELLI
each and all to me known and known to me to be the person(s) executing the foregoing instrument and acknowledged said execution to be _his_ free act and deed.

_____
Notary Public
My Commission expires 8/1/08

(Notarial Seal)

RHODE ISLAND-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    Form 3040 1/01
Docprep Services, Inc.                Page 16 of 16
                                      ORIGINAL

Received: 07/16/2004 02:14:34 1154 031

## EXHIBIT A

PARCEL 1: That certain lot or parcel of land with all the buildings and other improvements thereon, situated in the Town of South Kingstown, County of Washington and State of Rhode Island, laid out and designated as Parcel 3 on that certain plan entitled "Final Plan Jonathan Gilbert "A Three Lot Minor Subdivision" in the Town of South Kingstown, Rhode Island, Property of Raymond & Karen West, 1151 Curtis Corner Rd., Wakefield, R.I. 02879 to be acquired by Jonathan Gilbert, 968 South Road, Wakefield, R.I. 02879 Sep., 1996 Scale: 1" = 50'" which plan is recorded in the Land Evidence Records of the Town of South Kingstown on Plat Card C96-104.

PARCEL II: That certain lot or parcel of land with all the buildings and other improvements thereon, situated in the Town of South Kingstown, County of Washington, State of Rhode Island, laid out and designated as Parcel C on that plat entitled "ADMINISTRATIVE SUBDIVISION IN THE TOWN OF SOUTH KINGSTOWN, RHODE ISLAND PARCELS B & C OWNED BY WBRIDE, LLL, 1081 CURTIS CORNER ROAD, PEACEDALE, R.I. 02883 PARCEL A OWNED BY & PARCEL C TO BE ACQUIRED BY RAYMOND & KAREN M. WEST, 1101 CURTIS CORNER ROAD, PEACEDALE, RI 02883 APR. SCALE 1" = 80'" which plat is recorded in the South Kingstown Land Evidence Records on April 30, 1998 at 11:45 a.m. on Plat Card C98-29.

Plat 46, Lots 39 and 40

Property Address:
1101 Curtis Corner Road
South Kingstown, RI 02879

# EXHIBIT C

Assignment of Mortgage

{00353318.DOC}

# ASSIGNMENT OF MORTGAGE

This **ASSIGNMENT OF MORTGAGE** is made and entered into from **E*Trade Bank ( Assignor )** to **Bayview Loan Servicing LLC ( Assignee )** of **4425 Ponce De Leon Blvd., 5th Floor, Coral Gables, FL 33146.**

For good and valuable consideration paid, the receipt and sufficiency of which is hereby acknowledged, the Assignor, holder of the mortgage listed below, does by these presents hereby grant, bargain, sell, transfer, assign and set over unto the Assignee, its successors, transferees and assigns forever, all of the right, title and interest of said Assignor in and to the following instrument describing land therein, duly recorded in the Land Evidence Records of the Rhode Island city or town listed below, as follows:

| | |
|---|---|
| Mortgagor: | John Clark Donatelli |
| Mortgagee: | Dream House Mortgage Corporation by and through its nominee Mortgage Electronic Registration Systems, Inc. |
| Document Date: | September 9, 2004 |
| Recording Jurisdiction: | South Kingstown |
| Recording Reference: | in Book 1154, Page 16 |
| Property Address: | 1101 Curtis Corner Road, South Kingstown, RI 02879 |

Together with any and all notes and obligations therein described or referred to, the debt and claim respectively secured thereby and all sums of money due and to become due thereon, with interest thereon, and attorney s fees and all other charges. This Assignment is made without recourse, representation or warranty.

IN WITNESS WHEREOF the Assignor has caused these presents to be executed in its name, by its proper officer thereunto duly authorized, this 21st day of July, 2014. Effective Date:

             E*Trade Bank by Bayview Loan Servicing LLC, its Attorney-in-Fact

             Robert G. Hall
             ~~Vice-President~~
             By:
             Agent and Authorized Signatory

STATE OF **Florida**
COUNTY OF **Miami-Dade**

In _____ on the 21st day of July, 2014, before me personally appeared **Robert Hall**, to me known and known by me to be the party executing the foregoing instrument and he/she acknowledged said instrument by him/her to be his/her free act and deed and the free act and deed of **Bayview Loan Servicing LLC and of E*Trade Bank**.

             Print name: Rogelio A. Portal
[NOTARY SEAL]        Notary Public
             My Commission expires: 8/25/16

Our File No. 12.0081F.RI.I001

{00341819.DOCX}



ROGELIO A. PORTAL
Notary Public - State of Florida
My Comm. Expires Aug 25, 2016
Commission # EE 197169